IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-571-FL

| | |
|---|---|
| DOROTHY MCNAIR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings. (DE 18, 20). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R, denies plaintiff's motion, and grants defendant's motion.

**BACKGROUND**

In November 2010, plaintiff protectively filed an application for disability insurance benefits and a Title XVI application for supplemental security income. In both applications, plaintiff alleged disability beginning January 1, 2008. The claims were denied initially and upon reconsideration. Plaintiff requested hearing before an administrative law judge ("ALJ"), who held an evidentiary hearing on February 25, 2013. The ALJ denied plaintiff's claims by decision entered April 18, 2013. Following the ALJ's denial of her applications, plaintiff timely filed a request for review

before the Appeals Council. The Appeals Council entered an order dated June 17, 2014, remanding the case for further administrative action.

On September 16, 2015, plaintiff received another evidentiary hearing before a different ALJ. On June 24, 2016, the ALJ determined that plaintiff was not disabled. Plaintiff again requested review by the Appeals Council. On May 8, 2017, the Appeals Council entered additional evidence submitted by plaintiff into the record, and denied plaintiff's request for review. At that time, the decision of the ALJ became defendant's final decision. Plaintiff then filed this action seeking judicial review.

## DISCUSSION

A.     Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence [is] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v.

2

Colvin, 734 F.3d 288, 295 (4th Cir. 2013). "[T]he ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)); Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (holding an ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion").

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for benefits involves a five-step sequential evaluation process, which asks whether:

(1) the claimant is engaged in substantial gainful activity; (2) the claimant has a

medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since January 1, 2008. (Transcript of the Record ("Tr.") 18). At step two, the ALJ found plaintiff had the following severe impairments: idiopathic gastroparesis; pelvic inflammatory disease; major depressive disorder; anxiety disorder; obsessive-compulsive disorder ("OCD"); obsessive-compulsive personality disorder; borderline intellectual functioning; and bipolar disorder. (Tr. 18). At step three, the ALJ determined these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listings in the regulations. (Tr. 19).

Before proceeding to step four, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform light work, with the following restrictions:

> she can occasionally climb ramps, stairs, ladders, ropes and/or scaffolds, occasionally balance, stoop, kneel, crouch, and/or crawl. The claimant must avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. She is able to understand and perform simple, routine, repetitive tasks; and maintain concentration, persistence, and pace to stay on task for 2-hour periods over the course of a typical 8-hour workday. The claimant requires a low-stress setting, further defined to mean no production-pace or quota-based work, rather a goal-oriented job primarily dealing with things as opposed to people; no more than occasional changes in the work setting. She is limited to no more than occasional social interaction with supervisors, co-workers, and/or members of the public as part of the work. The claimant would not be expected to miss more than 1 day of work per month because of impairments and related symptoms.

(Tr. 21) (internal citations omitted).

At step four, the ALJ concluded plaintiff has no past relevant work. (Tr. 27). At step five, the ALJ determined jobs exist in the national economy that plaintiff can perform. (Tr. 27). Thus, the ALJ concluded plaintiff was not disabled under the terms of the Social Security Act. (Tr. 28).

B.  Analysis

In her objections to the M&R, plaintiff argues 1) the ALJ improperly weighed the credibility of her symptom testimony, 2) the ALJ improperly weighed the testimony and reports of plaintiff's mother and sister, and 3) the ALJ did not explain why he rejected the limitations assessed by Dr. Akpaka.[1] The court reviews plaintiff's credibility challenges, then the ALJ's consideration of Dr. Akpaka's opinion.

1.  Credibility Assessment

Plaintiff's first two challenges to the M&R assert that the ALJ failed to properly credit her testimony, her mother's testimony, and the reports of her mother and sister in formulating her RFC. (See Objections (DE 23) at 2-4).

Where an ALJ assesses credibility of evidence, the ALJ must first determine whether the claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. Hines v. Barnhart, 453 F.3d 559, 564 (4th Cir. 2006). After this determination is made, the ALJ must then evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 594–96 (internal citations omitted). The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . . laboratory findings, . . . daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Id. at 595 (internal citations omitted). The ALJ must not

---

[1] Plaintiff does not object to the magistrate judge's finding that the ALJ appropriately weighed the medical opinion of Dr. Daniels. The court reviews this portion of the M&R for clear error and finds none.

5

merely summarize the evidence in the record the ALJ deems credible in calculating plaintiff's RFC, but must explain, based on the evidence summarized, his conclusion that plaintiff can actually perform the tasks required by the designated RFC. Woods, 888 F.3d at 694. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

At the first stage of evaluating the credibility of plaintiff's testimony, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by plaintiff. (Tr. 22). However, at the second stage of the analysis, the ALJ concluded plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not persuasive based on medical and other evidence in the record. (Tr. 22). The ALJ also stated that "[t]he testimony of the claimant and her mother and the reports of her mother and her sister have been considered and given partial weight, but not to the extent that the claimant is disabled." (Tr. 26).

The ALJ conducts a thorough review of the evidence supporting the above decisions in this case. The ALJ notes that, prior to the alleged onset date, plaintiff in May 2007 reported vomiting 10 to 15 times daily, and testing around that time showed no acute process or abnormality in the abdomen. (Tr. 22 (citing Tr. 475, 476)). In July 2008 and December 2008, plaintiff sought treatment from an emergency department. (Tr. 22 (citing Tr. 834-35, 856-61, 916-49)). During the December 2008 visit, endoscopy was suggestive of gastroparesis, and a CT scan revealed bilateral complicated hydrosalpinx. (Tr. 22 (citing Tr. 834-35, 856-61)). Plaintiff improved and was released with prescribed medications Reglan and Protonix. (Tr. 23 (citing Tr. 834-35, 856-61)). Following diagnosis of plaintiff's ailment and initial prescription of these medications, plaintiff met over the next several years with Dr. Anthony Daniels, M.D., a gastroenterologist who helped adjust

and manage plaintiff's medication. (Tr. 23). Throughout the course of treatment, the ALJ noted that medication improved plaintiff's symptoms, though plaintiff sometimes had trouble filling her prescriptions for financial reasons. (See Tr. 23-24 (citing Tr. 613-98, 709-10, 796, 950-61)). Plaintiff also presented several times at the emergency department requiring care for nausea, vomiting, and abdominal pain, though she "improved with treatment and was stable each time she was released." (See, e.g., Tr. 23-24 (citing Tr. 962-99, 1099-1411) (discussing several instances where plaintiff was treated and released)).

With regard to plaintiff's mental impairments, the ALJ noted that claimant had no treatment from a mental health provider, but that consulting physicians had evaluated plaintiff in March 2013. (Tr. 24-25 (citing Tr. 1068-84)). Dr. Kantesaria opined that plaintiff had a depressed mood and constricted affect, but that intelligence was normal, speech was coherent and goal-directed, and insight and judgment were intact. (Tr. 24 (citing Tr. 1068-71)). Dr. Akpaka opined that claimant was capable of understanding, retaining, and following simple instructions, but was impaired interacting with co-workers and responding to usual work situations. (Tr. 25 (citing Tr. 1077-84)). In conjunction with their assessments, Dr. Kantesaria and Dr. Akpaka both assigned Global Assessment of Functioning ("GAF ") scores of 60-65, indicative of mild to moderate degrees of functioning. (Tr. 24-25 (citing Tr. 1068-71, 1077-84)).

Based on this evidence, the ALJ then goes on to "build an accurate and logical bridge from [that] evidence to his conclusion." Woods, 888 F.3d at 694. In reaching his credibility determination regarding plaintiff, her sister, and her mother's testimony and reports, the ALJ provides the following explanation:

> The claimant's gastric emptying study was normal on Reglan. When she was receiving medication management and consistent treatment from Dr. Daniels, signs and symptoms were improved and more stable. When she lacked medication and had

> gaps in treatment, signs and symptoms worsened, requiring hospital treatment. The claimant has received no mental health treatment, and few complaints were documented throughout the medical record. Both consultative examiners assessed GAF scores in the range of 60-65, indicative of mild to moderate symptoms or mild to moderate difficulties in functioning. These assessments are consistent with the claimant's own subjective reports, which reflect mild restriction in activities of daily living; moderate limitations in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. In short, the weight of the evidence does not support a disabling degree of impairment.

(Tr. 26-27). The ALJ's explanation of his credibility determination is both an accurate and logical interpretation of the evidence as it bears on the credibility of the testimony and reports submitted by plaintiff, her mother, and her sister. With regard to plaintiff's gastroparesis and other physical symptoms, the ALJ observes from the evidence he cites in the record that medication management and consistent treatment stabilized and improved plaintiff's symptoms, and that plaintiff's gastric emptying study was normal on Reglan. (See Tr. 23-24, 26 (internal citations omitted)). Such an assessment calls into question assertions such as plaintiff's assessment that her medications are not working, or her mother's assessment that plaintiff's symptoms have gotten worse. (See Tr. 22); Gross, 785 F.2d at 1166. Similarly, the ALJ explained that the evidence concerning plaintiff's mental health was indicative of only mild to moderate symptoms or mild to moderate difficulties in functioning based on the lack of mental health treatment and the consultative examiners' assessments of her functioning. (Tr. 26). The ALJ also stated that plaintiff's subjective reports were consistent with the rest of the evidence on the record. (See Tr. 26-27).

Consequently, the ALJ's decision to only give plaintiff's testimony, her mother's testimony, and the reports of plaintiff's mother and sister partial weight in formulating plaintiff's RFC is supported by substantial evidence. Plaintiff's first two objections to the M&R are overruled.

2. Weighing Medical Opinion Testimony

Turning to the ALJ's opinion testimony, plaintiff argues that the ALJ did not accommodate

or explain the rejection of limitations Dr. Akpaka assessed. (See Objections (DE 23) at 4-6).

The standard for evaluating medical opinion evidence for claims filed before March 27, 2017 applies in this case. 20 C.F.R. § 404.1527. The ALJ is responsible for weighing every medical opinion received, based on 1) whether the physician has examined the applicant; 2) the treatment relationship between the physician and the applicant; 3) the supportability of the physician's opinion, 4) the consistency of the opinion with the record; 5) whether the physician is a specialist; and 6) other factors brought to defendant's attention, such as the amount of understanding of defendant's disability programs and their evidentiary requirements, and the physician's familiarity with other information in the record. See 20 C.F.R. § 404.1527(c); Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). Although an ALJ is not required to expressly consider each factor in deciding to give relevant weight to a medical opinion, the ALJ must provide "good reasons in his decision for the weight he gave" to medical opinion evidence. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Consistent with applicable regulations, the ALJ identified several reasons why he did not credit Dr. Akpaka's opinions of "marked impairment" and that plaintiff was "significantly limited." (See Tr. 25). First, the ALJ noted that "[b]oth doctors estimated moderate GAF scores at worst, which is not consistent with functional statements in line with marked limits."[2] (See Tr. 24-25 (citing Tr. 1068-71, 1077-84)). Second, the ALJ balanced the inconsistencies between Dr. Kantesaria's opinion that plaintiff was only mildly impaired and Dr. Akpaka's contrasting opinion

---

[2] Later in his decision, the ALJ further clarifies the GAF scores are "consistent with the claimant's own subjective reports, which reflect mild restriction in activities of daily living; moderate limitations in social functioning; and moderate difficulties in maintaining concentration, persistence, and pace." (Tr. 26-27).

that plaintiff was significantly limited. (See Tr. 25). Third, the ALJ noted in his assignment of weight that both physicians' opinions were consultative opinions, and were based on one-time examinations. (Tr. 25; see Tr. 1068-71, 1077-84).

Consequently, substantial evidence supports the ALJ's determination regarding the weight assigned to the medical opinions of Dr. Akpaka. Plaintiff's third objection to the M&R is overruled.

## CONCLUSION

Based on the foregoing, and upon de novo review of the administrative record, the court DENIES plaintiff's motion for judgment on the pleadings, (DE 18), and GRANTS defendant's motion for judgment on the pleadings, (DE 20). The clerk is DIRECTED to close this case.

SO ORDERED this the 8th day of March, 2019.

LOUISE W. FLANAGAN
United States District Judge